**Steven R. PERLES, Plaintiff,**

v.

**Anne Marie KAGY, Defendant.**

**Civil Action No. 01–0105 (TPJ)(AK).**

United States District Court, District of Columbia.

Aug. 18, 2004.

Steven Marc Schneebaum, Patton Boggs LLP, Washington, DC, for Plaintiff.

David Edward Sher, Sher & Cummings, Arlington, VA, for Defendant.

### DECISION AND ORDER

KAY, United States Magistrate Judge.

The above-captioned case was referred to this Court by Judge Thomas Penfield Jackson pursuant to Rule 72.3(a) of the Local Rules of the United States District Court for the District of Columbia for a determination of the amount of the net fee or fees paid to Stephen R. Perles, P.C., in *Flatow v. Islamic Republic of Iran, et al.*, 999 F.Supp. 1 (D.D.C.1998 (97–cv–396)) in consequence of the judgment for compensatory damages entered by Judge Lamberth on March 11, 1998, as well as to resolve the *quantum meruit* issues germane to *Eisenfeld v. The Islamic Republic of Iran* and *Duker v. The Islamic Republic or Iran.* This Decision and Order will address the issues pertaining to *Flatow.* A decision by this Court in the *Eisenfeld* and *Duker* cases will follow at a later time.

### I. BACKGROUND

On April 9, 1995, Alisa Flatow, a young American Woman, was killed in Israel as a result of a suicide bomb attack. Stephen Flatow, the decedent's father, commenced a lawsuit against the Islamic Republic of Iran for wrongful death on the theory that the Islamic Jihad, the direct perpetrators of the attack, were agents of Iran and its Ministry of Information and Security ("MOIS"). Stephen Flatow hired attorney Stephen Perles, a solo practitioner in the District of Columbia to represent him in the lawsuit. In the Spring of 1996, Anne Marie Lund Kagy, a recent law school graduate, approached Perles about employment opportunities with his law practice. Although Perles was unable to pay Kagy a set salary, he offered her work in exchange for a percentage of the attorneys fees that he collected. A large percentage of Kagy's work product over the next four years pertained to the *Flatow* case. In addition to her work in *Flatow*, Kagy worked on the *Eisenfeld* and *Duker* cases, among others.

On March 11, 1998, Judge Royce C. Lamberth entered judgment for the plain-

tiff in *Flatow* against the Iranian defendants aggregating over $22.5 million in compensation damages and $225 million in punitive damages. *See generally, Flatow,* 999 F.Supp. 1 (D.D.C.1998). On January 4, 2001, Congress appropriated money to pay the judgments in the *Flatow, Eisenfeld,* and *Duker* cases.

Following the award of compensatory damages in these cases, as well as the subsequent availability of funds to pay the judgment, a dispute arose between Perles and Kagy over the compensation for Kagy's services in the *Flatow, Eisenfeld,* and *Duker* cases. Following a bench trial in January 2003, Judge Thomas Penfield Jackson entered a Decision and Order ("Jackson Order"), dated April 10, 2003, finding that Kagy is entitled to judgment in the amount of one-third of any net fee paid to Perles in the *Flatow* case. On July 10, 2003, Judge Jackson amended his Order ("Jackson Amended Order") to allow Kagy's *quantum meruit* claim for compensation for services in the *Eisenfeld* and *Duker* cases.

This matter was referred to this Court to determine the amount of the "net fee or fees paid to Stephen R. Perles, P.C., in the *Flatow* case aforesaid in consequence of the judgment for compensatory damages entered by Judge Lamberth on March 11, 1998." (Jackson Order at 11.) Additionally, this Court has before it defendant's *quantum meruit* claim arising from her work on the *Eisenfeld* and *Duker* cases. (Jackson Amended Order at 2.)

On December 16, 2003, this Court began a three-day hearing on the above issues. In consideration of the evidence presented at the hearing, the briefs submitted by both parties in advance of the hearing, as well as the entire record herein, the Court makes the following findings and issues the following Decision and Order.

## II. FINDINGS

### A. Judgment Amount and Distribution to Attorney Perles

On January 4, 2001, funds equaling $26,002,690.15 were distributed into the Flatow Trust Account. (Plaintiff's Exhibit P.) On January 13, 2001, two separate payments totaling $8,682,145.35 were made to Plaintiff Perles and his co-counsel, Thomas Fay. This sum represents the aggregate of both a compensatory damages award of $7,504,406.66 and interest of $1,163,156.72, based on the Victims of Trafficking and Violence Protection Act of 2000, Pub.L. 106–386, 114 Stat. 1464, § 2002.

### B. Interest Incident to Judgment in Flatow

■ The fee distribution made to attorneys Perles and Fay include both a one-third portion of the compensatory damages judgment by Judge Lamberth as well as an interest assessment based on that compensatory damages amount.[1] The parties disagree as to whether the interest assessment should be calculated in a determination of "net" fees. Plaintiff Perles argues that the net fee or fees paid "in the *Flatow* case aforesaid in consequence of the judgment for compensatory damages" (Jackson Order at 11.) necessarily includes only fund distributions for compensatory damages. Furthermore, the Plaintiff claims that the Victims of Trafficking and Violence Protection Act of 2000 differentiates compensatory from interest assessments,

---

1. It is important to note that there are two distinct categories of post-judgment interest. The first is an amount already distributed to attorneys Perles and Fay in the amount of $1,163,156.72, representing interest incident to Judge Lamberth's decision in *Flatow*. The second post-judgment interest represents interest that has been accruing following Judge Jackson's decision in *Perles v. Kagy*. This will be discussed *infra* at III.

further strengthening the claim that compensatory damages and interest are to be treated separately. Thus, the Plaintiff asserts, the language in Judge Jackson's order must be read to mean compensatory damages only, and exclusive of interest payments. The Plaintiff's argument, however, ignores one important factor, which, when considered by this Court, favors the inclusion of the interest assessment in a determination of "net" fees. Judge Jackson's Order, while specifically mentioning compensatory damages, states that fees to be considered are those *"in consequence of the judgment for compensatory damages."* (Jackson Order at 11.) (emphasis added). This Court understands "in consequence" to mean any payments naturally flowing from or incident to the compensatory damages award. The interest paid to the Flatow Trust is predicated on, and calculated by, the total compensatory damages award and thus, is "in consequence" of the compensatory damage award. Additionally, inasmuch as the interest amount will serve as profit for Perles, it is only just that this amount factor into any distribution to Kagy in consequence of her contract with Perles.

For these reasons, the Court finds that the gross fees paid to attorney Perles as the total amount in ultimately determining Kagy's one-third share is $4,333,781.69, which represents one-half of attorneys' fees paid to Perles and Fay.

Having determined the gross fee paid to Perles, subject to his percentage agreement with Kagy as determined by the Trial Court, this Court will next determine the deductions, both in the form of direct and indirect expenses, necessary for a determination of "net" fees.

### C.  Direct Expenses

■   As Plaintiff suggests in his *Amended* Pre–Trial Brief ("Plaintiff's Brief"), "net" fee is the gross fee less costs reasonably attributable to the generation of the fee. *See also,* Blacks Law Dictionary (7th Ed.1999)(defining "net" as "that which remains after all allowable deductions, such as charges, expenses, discounts, commissions, taxes, etc., are made"). In preparing and litigating the *Flatow* case, attorney Perles incurred several expenses related directly to the *Flatow* litigation—direct expenses. These direct expenses, totaling $231,150.00, include filing fees, videographer fees, expert fees, and fees incurred by local counsel. (Plaintiff's Brief at 5–6.) This Court credits the Plaintiff's assertions at the hearing that these expenses were either necessary for the litigation or based on rational judgments by Perles in the operation of his law practice. To determine "net" fees, therefore, the direct expenses must be subtracted from the gross fee.

### D.  Indirect Expenses

In addition to direct expenses incurred as a cost of litigation, there are several indirect expenses which are reasonably attributable to the *Flatow* litigation and are thus necessary deductions in a calculation of "net" fees. Plaintiff's Exhibit 119 provides an accounting of the indirect expenses incurred by Perles from January 1996 to January 2001. At the December 2003 hearing, Donna Keeney, Perles' bookkeeper, testified that she had created Exhibit 119 from the records that she kept in the ordinary course of business. (Tr. 12/16/03, afternoon, at 81.) While the total amount of the indirect expenses incurred by Perles between January 1996 and January 2001 covered by Exhibit 119 comes to $802,439.93, the amount that Plaintiff attributes to *Flatow* comes to $636,606.67. (Plaintiff's Brief at 6.) This reduction was calculated by taking percentages of time Perles worked on *Flatow* in each of six year periods, and multiplying those per-

centages by the total indirect expense of the respective year. Because Perles did not keep time records of his own work during these periods, the percentages he provides are his educated guesses of his time spent on *Flatow*. Although not precise, the Court gives deference to Perles' assertions in this regard and does not challenge these figures absent a showing that the calculations are faulty, not reasonable, or not fairly attributable to *Flatow*.

▮ While accepting Perles' percentages, the Court rejects the "salary" and retreats' entries as unreasonable. These two entries will therefore not be factored into a calculation of the net fee received by Perles.

The first of these indirect expenses is the entry titled "salary." According to Keeney, the salary category represents monies taken by Perles for the given year. (Tr. 12/16/03, afternoon, at 94.) Because "net" implies a reduction based on reasonable expenses taken prior to any ultimate compensation and because salary is a measure of compensation, it does not make sense to deduct salary as an indirect expense first and then have any remainder as "net" fees, from which ultimate compensation would be calculated. If the Court were to accept Perles' characterization of salary as an indirect expense, Perles would be receiving double compensation for his work on *Flatow*.

The second of these indirect expenses is the "retreats" entry. As Perles testified, this item represents rent, food, and other miscellaneous expenses incurred by Perles on numerous "retreats" to Emerald Isle in North Carolina. (Tr. 12/16/03, afternoon, at 73.) Perles testified that he took these retreats "for the purpose of being able to go someplace quiet and work." (Id. at 73.) Perles concedes that his family always accompanied him to Emerald Isle, and that, on the occasions classified as "vacations,"

he did not do any work. (Id.) While the Court does not doubt that, at some points during these trips, Perles was engaged in business, the Court finds his classification of these excursions sometimes as "retreats" and other times as "vacations" to be vague and imprecise. There is no way for Perles or this Court to determine with any degree of accuracy the fair portion of these trips allocable to *Flatow*. Furthermore, assuming arguendo that Perles was engaged in serious work activities while at Emerald Isle, the Court finds that the trip itself was entirely at the election of Perles, not Kagy. While Perles is certainly entitled to conduct his work activities at any location of his choosing, it would be unreasonable and indeed unfair if the added transportation, rent, and food costs, *inter alia*, were shared by Kagy. These are discretionary expenses chosen by Perles for his own benefit and thus will not serve to reduce the amount classified as "net" expenses.

Having removed the "salary" and "retreat" items from the indirect expenses, the Court finds Perles' total indirect expenses to be $408,599.31. Using the percentage allocations provided by Perles, the Court finds the total indirect expenses fairly attributable to *Flatow* to be $317,394.57.

### III. CONCLUSION

As stated above, the Court finds that the total "gross" fee paid to Perles and subject to his contract with Kagy is $4,333,781.69. The total direct expenses to be deducted are $231,150.00 and the total indirect expenses are $317,394.57. Based on these numbers, it is the determination of this Court that the "net fee or fees paid to Stephen R. Perles, P.C. in the *Flatow* case aforesaid in consequence of the judgment for compensatory damages" (Jackson Order at 11) is $3,785,237.12.

Both parties agree that Kagy is entitled to an adjustment for interest incident to judgment in *Perles v. Kagy*, yet they dispute the percentage to be used in determining that amount. Ordinarily, and as the Plaintiff has explained in his Proposed Findings of Fact, an award of interest is appropriate when the party holding the funds has been able to enjoy the fruits of wrongful retention because another party is properly entitled to those funds. Here, however, Kagy, through counsel, imposed an equitable lien on the fee award in Perles' control. This lien prevented Perles from investing the award, or otherwise from taking any steps to maximize the return on it. Kagy argues that she was deprived of the ability to use and invest the funds during this litigation and therefore, is entitled to an interest assessment based on missed investment opportunity. While the Court acknowledges that Kagy did not have use of her portion of the attorney's fees, the Court cannot ignore the fact that the decision to place a lien on the funds in Perles' possession rested entirely with her, and a consequence of that decision is the loss of the ability to claim interest set at an investment rate rather than the actual interest accrual rate.

It is, therefore this 18th day of August, 2004

**ORDERED** that Stephen Perles pay Anne–Marie Kagy one-third of $3,785,237.12, the net fee paid to Perles in the *Flatow* case in consequence of the judgment for compensatory damages; and it is

**FURTHER ORDERED** that Stephen Perles pay Ann–Marie Kagy one-third of the actual interest accrued on the above-mentioned sum.